953 So.2d 865 (2007)
STATE of Louisiana, Appellee
v.
Gregory Ronard TYNER, Appellant.
No. 41,937-KA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 2007.
*866 James E. Beal, Louisiana Appellate Project, Jonesboro, for Appellant.
Paul J. Carmouche, District Attorney, J. Dhu Thompson, Jeremy S. Lacombe, Tommy J. Johnson, Assistant District Attorneys, for Appellee.
Before GASKINS, CARAWAY and SEXTON (Pro Tempore), JJ.
GASKINS, J.
The defendant, Gregory Ronard Tyner, was convicted by a jury of aggravated battery. After pleading guilty to being a second felony offender, the defendant was sentenced to an agreed term of 20 years at hard labor without benefit of probation or suspension of sentence. The defendant appeals his conviction. For the following reasons, we affirm.

FACTS
On May 17, 2005, the defendant was charged by bill of information with one count of aggravated battery for striking Jecorey Wayne Bryant over the head with a metal pipe. The defendant's trial was held on October 25-26, 2005.
The victim testified that during the early evening of April 24, 2005, he and the defendant were among a group of people hanging out at a park. At some point, the defendant, who was carrying a metal pipe and appeared upset, approached Mr. Bryant. The defendant asked Mr. Bryant, "Who got my backpack?" Despite Mr. Bryant's denial of having the defendant's backpack, the defendant accused him of taking it. Mr. Bryant claimed the defendant then struck him over the top of the head with the metal pipe. Mr. Bryant testified that he was bleeding profusely from the wound and that he was treated by firefighters and paramedics who arrived soon thereafter. While he was being treated in the back of the ambulance, the defendant approached again and charged at Mr. Bryant with a wooden stick that he was holding like a baseball bat. The defendant was wrestled to the ground by fire personnel who held him until the police arrived. Mr. Bryant was subsequently taken to the hospital where he received staples to close his wound. Mr. Bryant denied being armed or making any threatening gestures toward the defendant either prior to or after being struck in the head.
Michael Covert, a firefighter and paramedic with the Shreveport Fire Department, *867 testified that he was in one of two units that responded to an aggravated battery call in the park on April 24, 2005. He testified that when the fire department units arrived, the defendant and the victim were "squared off" against each other as though they were ready to fight and that this situation continued for a few minutes until the defendant ran out of sight. When he did, Mr. Bryant, who was covered with blood, approached the paramedics for treatment.
Firefighter Covert, who was standing back while other paramedics treated Mr. Bryant, heard someone say, "Look out, here he comes." The firefighter turned to see the defendant approaching with a wooden stick over his shoulder and apparently looking for someone. Firefighter Covert stated that when the defendant saw the victim, he raised the stick over his head and began charging in that direction. The firefighter tackled the defendant from behind, causing him to lose his grip on the stick. Firefighter Covert testified that he kept the defendant pinned down until the police arrived and took him into custody. According to Firefighter Covert, at no time after his arrival on the scene did Mr. Bryant attack the defendant or brandish a weapon of any kind.
Felton Wayne Dukes lives near the park and testified that he was between 10 to 15 steps from Mr. Bryant at the time of the incident. He testified that there were a lot of people around engaging in different activities, such as dice games. Mr. Dukes stated that the defendant "came out the blue with a pipe and struck the little dude in the head." Mr. Dukes testified that Mr. Bryant asked the defendant why he hit him and the defendant stated that Mr. Bryant had stolen something from him. The two then ran around each other until the defendant left the scene. Mr. Dukes confirmed that the defendant later returned and tried to hit Mr. Bryant again. Mr. Dukes did not see a gun or any other weapon on Mr. Bryant's person and said that Mr. Bryant did not attack the defendant prior to being hit with the pipe.
Jeff Allday, an officer with the Shreveport Police Department who was dispatched to investigate this incident, testified that when he arrived at the scene, the defendant was being held on the ground by two members of the Shreveport Fire Department. Mr. Bryant was being treated in the back of the ambulance. He stated that the victim had a large laceration on the top of his head and was covered in blood.
Officer Allday took photographs of the injury and collected the wooden stick from the firefighters. He also found a metal pipe with blood on it while combing the scene. Officer Allday testified the defendant was read his Miranda rights several times. While being transported to the police station, the defendant made an unsolicited admission that he hit the victim because the victim had stolen $1,500.00 from him.
Officer Allday was questioned about whether there had been any other dispatches made during the time in question regarding a report of anyone having money stolen. He denied the existence of any such dispatch and stated that as the officer on the scene, he would have been the officer to receive such a dispatch. After Officer Allday's testimony, the metal pipe, wooden stick, photographs of the victim's injury and the victim's medical records were all offered and admitted into evidence; the state rested its case.
The defendant took the stand and testified that on the day in question, he placed his backpack on a bench in the park. The backpack contained $1,500.00 which he had recently received from his mother-in-law. He claimed that he had been saving money *868 to go to California and enter a drug rehab program. He left the backpack while he went to "get stuff from the house," which was near the park. When he returned, the backpack was gone. He testified that he was told Mr. Bryant was the one who took his backpack. The defendant said that he went to his house and dialed 911 to report the theft. Then, concerned that Mr. Bryant would leave the scene before the police arrived, he approached the victim, picking up a metal pipe on the way.
According to the defendant, Mr. Bryant was leaning over a car talking to some people when the defendant asked him, "Jecorey, do you have my money?" The defendant testified that Mr. Bryant denied having the money and then started walking toward the defendant in an "aggressive" manner. The defendant alleges that he saw a gun on Mr. Bryant's side when he first approached him and that Mr. Bryant then purposely showed it to him. As the victim continued to approach the defendant, the defendant began swinging the pipe in front of the victim to keep him at bay. While swinging the pipe, the defendant claimed that it accidentally slipped out of his hand and struck Mr. Bryant on the top of the head. According to the defendant, Mr. Bryant then picked up a stick and started pursuing the defendant. The defendant ran to his home, retrieved another stick, and returned to the scene to talk to the police. On cross-examination, the defendant added that, at some point during the altercation, the victim threw bottles at him. The defendant claimed that the backpack and the gun were in the car and he asserted that the people in the car talked Mr. Bryant into taking the backpack.
At the conclusion of the trial, the jury returned a verdict of guilty as charged of one count of aggravated battery. Thereafter, the state filed a bill of information alleging that this last conviction was the defendant's third felony conviction and requesting that he be sentenced as such. The defendant filed a motion to quash the bill of information on the basis that the pleas obtained in the two prior convictions were not voluntarily given after a proper advisement of rights. The defendant also filed a motion for a new trial and a motion for post verdict judgment of acquittal, arguing that the evidence adduced at trial was insufficient to support a conviction. These two motions were denied by the trial court.
The adjudication hearing on the multiple offender bill of information took place on May 18, 2006. During the course of the proceedings, a plea agreement was reached in which the defendant agreed to plead guilty as a second felony offender and to receive a sentence of 20 years at hard labor with credit for time served. The defendant withdrew his motion to quash the multiple offender bill of information. He also forfeited his right to appeal or seek review of the agreed upon sentence. The defendant reserved his right to appeal the conviction for aggravated battery. The plea was entered on the record and the defendant was sentenced to 20 years at hard labor without the benefit of probation or suspension of sentence. The defendant now appeals.

SUFFICIENCY OF THE EVIDENCE
The defendant claims that the evidence was insufficient to convict him of aggravated battery. The defendant's appellate counsel argues that the state failed to prove beyond a reasonable doubt that he was not acting in self-defense when he struck the victim. The defendant cites his own testimony as to the victim's possession of a gun, and that the victim was advancing toward him. In his brief, the defendant also points out that he is terminally *869 ill. At trial, the defendant stated that he went home and got the wooden stick because he was sick and did not want to fight the victim.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983). This court's authority to review questions of fact in a criminal case is limited to the sufficiency of-the-evidence evaluation under Jackson v. Virginia and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). It is the role of the fact finder to weigh the respective credibility of the witnesses and, therefore, an appellate court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
A battery is the intentional use of force or violence upon the person of another, or the intentional administration of a poison or other noxious liquid or substance to another. La. R.S. 14:33. Aggravated battery is a battery committed with a dangerous weapon. La. R.S. 14:34. "Dangerous weapon" includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(3).
The defendant's burden of proof, when a defendant claims self-defense in a nonhomicide case, is a preponderance of the evidence. State v. Freeman, 427 So.2d 1161 (La.1983); State v. Updite, 38,423 (La.App. 2d Cir.6/23/04), 877 So.2d 216, writ denied, XXXX-XXXX (La.11/24/04), 888 So.2d 229. The state must then prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, cert denied, Scales v. Louisiana, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996), rehearing denied, 516 U.S. 1142, 116 S.Ct. 977, 133 L.Ed.2d 897 (1996); State v. Updite, supra. The issue of self-defense requires a dual inquiry: an objective inquiry into whether the force used was reasonable under the circumstances and a subjective inquiry into whether the force was apparently necessary. State v. Robinson, 37,043 (La.App. 2d Cir.5/14/04), 848 So.2d 642. A person who is the aggressor or who brings on the difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21; State v. Updite, supra; State v. Robinson, supra.
In the case sub judice, the evidence was sufficient under the Jackson standard to support the defendant's conviction of aggravated battery. There is no question that the defendant struck the victim over the head with a metal pipe with sufficient force to create a large laceration and cause copious amounts of bleeding. The record reflects that the defendant intentionally used force and violence upon the victim while using a dangerous weapon. The metal pipe used in the instant case was a dangerous weapon, due both to its weight and the manner in which it was used. It was clearly calculated or likely to produce death or great bodily harm.
*870 The record also supports the conclusion that the defendant failed to prove his claim of self-defense by a preponderance of the evidence. See State v. Freeman, supra; State v. Updite, supra. The only evidence that he acted in self-defense was his own self-serving testimony, which was not corroborated by anyone, including an eyewitness who claimed to be present during the entire altercation. The defendant's testimony was obviously discredited by the jury, given all the evidence to the contrary. Even the defendant's own testimony tended to prove that he armed himself with the metal pipe as he approached the victim with the intent to have a confrontation with him. While the defendant claimed that he had been told the victim had a gun, that he saw the gun, and that the victim was acting aggressively, there was no corroborating evidence to that effect despite the presence of dozens of other people. The defendant's contention that he suffers from a terminal illness is of no moment. The record overwhelmingly supports the fact that the defendant was not attacked by the victim before he struck the victim over the head with the metal pipe. Accordingly, whether his health made him feel more vulnerable to such an attack is irrelevant.
Further, the defendant testified that he left the scene, went home and returned with a stick. Witnesses testified that the defendant tried to attack the victim again as the victim was being treated for his injuries.
The trier of fact made specific findings regarding the credibility of the witnesses. The role of this court is not to assess the credibility of witnesses or reweigh evidence. See State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. From the record before us, those findings are clearly reasonable.
The defendant's appellate counsel also complains of the presence in the appellate record of the medical records of an individual who is unrelated to the case. The appellate counsel admits that he did not see the actual trial exhibits; however, he challenges the use of these medical records in the event they were submitted to the jury. While appellate counsel correctly notes that the appellate record contains the medical records of someone other than the victim, it appears that they were incorrectly provided to defense counsel in a pretrial supplemental response to discovery. The exhibit folder containing evidence actually admitted into evidence and considered by the jury contains the records of the victim, Jecorey Bryant, and not those of the other person. Accordingly, the defendant's claim that the evidence was insufficient to support his conviction is without merit.

CONCLUSION
For the foregoing reasons, the conviction and sentence of the defendant, Gregory Ronard Tyner, are affirmed.
AFFIRMED.